State of Missouri, at the Relation of The Board of Directors of The St. Louis Public Library, a Corporation; and Robert C. Day, Jacob M. Lashly, Alfred Fleishman, William L. Heckmann, John S. Leahy, Oreon E. Scott, John C. Tobin, Faye R. Toma, Individually and as Directors of the St. Louis Public Library, Relators, v. John J. Dwyer, Treasurer of the City of St. Louis, Respondent, No. 42049—234 S. W. (2d) 604.

Court en Banc, November 13, 1950.

Rehearing Denied, December 11, 1950.

*M. P. Phillips* for relators; *Lashly, Lashly & Miller* of counsel.

*James E. Crowe,* City Counselor, and *Charles J. Dolan,* Assistant City Counselor, for respondent.

[605] HYDE, C. J.—Mandamus to require the Treasurer of the City of St. Louis to set apart for the Library Fund of the City Free Public Library, 4/175 of the amounts received from the State Director of Revenue for taxes collected on intangible personal property, bank stocks, accounts of savings and loan associations and credit institutions for the year 1946; and 6/177 of the amounts collected from these sources for the years 1947, 1948 and 1949. The question involved is whether Sections 4 and 15, Art. X, 1945 Constitution prevent these amounts from going to the Library Fund.

The Library was established in 1901 under the Library Act of 1885 (Laws 1885, p. 192) now Art. 5, Chap. 110, R. S. 1939, Sec's. 14752-14766, R. S. 1939, Mo. R. S. A. (See State ex rel. Carpenter v. City of St. Louis, 318 Mo. 870, 2 S. W. (2d) 713). The Library is an institution of the City operated by a board of nine directors appointed by the Mayor, with the approval of the legislative branch of the municipal government. The tax of four cents on the $100.00 assessed valuation was voted by the people of the City and was in effect until 1947. It was then increased to six cents under authority of a special election held in November 1946. This Library tax is collected on all real and tangible personal property in the City and all proceeds of such collections made by the City Collector are set apart for the Library Fund. Only the taxes collected by the State Revenue Department on the above mentioned classes of intangible property are in issue.

The City contends that the right to participate in the distribution of the proceeds of taxes on intangible personal property is restricted by the State Constitution to subdivisions, public corporations or quasi-corporations "having the power to tax." The City says: "Relators have to prove, in order to establish their case, that the Board of Directors of the Public Library of the City of St. Louis has power to tax, and that the levy made by the Board of Aldermen for the maintenance and support of the Public Library is actually a levy made by the said Board of Directors." The City further contends that the allocation of taxes made by the Director of Revenue when he returns the money to the City Treasurer controls.

Sec. 4(c), Art. X, is as follows: "All taxes on property in Class 3 and its subclasses, and the tax under any other form of taxation substituted by the general assembly for the tax on bank

shares, shall be assessed, levied and collected by the [606] state and returned as provided by law, less two per cent for collection, to the counties and other political subdivisions of their origin, in proportion to the respective local rates of levy.''

Sec. 15 is as follows: ''The term 'other political subdivision', as used in this article, shall be construed to include townships, cities, towns, villages, school, road, drainage, sewer and levee districts and any other public subdivision, public corporation or public quasi-corporation having the power to tax.''

To implement these Constitutional provisions the General Assembly enacted four statutes (Laws 1945, p. 1914, p. 1919, p. 1921 and p. 1937.) These Acts require the Director of Revenue to return the amount collected (less 2%) to the Treasurer of the County of the taxpayer; and require the Treasurer of St. Louis (and County Treasurers) ''to distribute all amounts so received from the Director of Revenue according to the allocations contained in the returns made by the Director.'' (Laws 1945, p. 1918, p. 1925 and p. 1941.) The purpose of these Acts is stated as follows: ''to provide a property tax on intangible personal property, as herein defined, which has a taxable situs in this state for the purpose of this Act, pursuant to the provisions of Section 4 of Article X of the Constitution of Missouri.'' (Laws 1945, p. 1919); ''to substitute the tax provided by this Act for the tax on bank shares which was imposed by Section 10959, Revised Statutes of Missouri, 1939, and for all taxes on all tangible and intangible personal property of all banking institutions subject to the provisions of this Act, and for all property taxes on the shares of such banking institutions.'' (Laws 1945, p. 1925); ''to substitute the tax provided by this Act for all taxes on all tangible and intangible personal property of all credit institutions subject to the provisions of this Act and for all property taxes on the shares of such credit institution.'' (Laws 1945, p. 1941.)

For 1946, the Director of Revenue returned to the Treasurer of St. Louis 175/266 for the City of the taxes collected (on the basis of the City rate of $1.75 on the $100.00 valuation) and 91/266 thereof for the Board of Education, since its levy was 91 cents. The City tax rate for 1946 as fixed by ordinance was as follows:

''Real and Personal Property Taxes

| | | |
|---|---|---|
| for Municipal Purposes ........... | $1.27 | per $100.00 of assessed valuation |
| Public Library ................. | .04 | per $100.00 of assessed valuation |
| Art Museum ................... | .02 | per $100.00 of assessed valuation |

| | |
|---|---|
| Zoological Park .................. | .02 per $100.00 of assessed valuation |
| Interest and Sinking Fund ........ | .40 per $100.00 of assessed valuation |
| Total City Purposes ................ | $1.75'' |

Of course, the Library is not a political subdivision of the State under the definition of Sec. 15, Art. X of the Constitution (or any other definition); but we do not think that determines the matter as the City contends. Sec. 4, Art. X, only provides that the Director of Revenue shall return the taxes he collects "to the counties and other political subdivisions of their origin, in proportion to the respective local rates of levy." It does not say for what purposes the taxes should thereafter be used by the political subdivision to which they are allocated; and it does not authorize the Director to decide that matter. It only gives him a formula to determine how much of the money should go back to the City and each other political subdivision thereof or of any county. (In the case of St. Louis there is only the City and the Board of Education.) There is certainly nothing therein to indicate that these taxes were not to be used by the City (or any other political subdivision) for the purposes for which they were levied. Likewise, the Acts of the Legislature only require that the Treasurer of St Louis (or a county treasurer) distribute this money to the political subdivisions of the City or county) according to the allocations made by the Director. The allocations here were only to the St. Louis Board of Education and the City of St. Louis. There is nothing in these Acts to direct how the money should be [607] used by the City of St. Louis. We must look to other statutes to determine that; and one of these is the Library Act which makes the Library an institution of the City. The purposes stated in the new Acts of the 1945 Session clearly indicate that they were only intended to substitute new methods of taxation to replace the former ad valorem tax on intangibles, and improve former methods of taxing banks and credit institutions. There is nothing to show a purpose to provide new objects for such taxes or to require any different use of the money than was made of the former taxes. They certainly do not disclose any intention of using the rate voted by the people for the Library for any other City purpose or to modify the Library Act in any way.

The City's tax rates have been fixed to provide for the Library Fund for half a century. Since the adoption of the 1945 Constitution, the City has been using the Library tax as a part of the local rate of levy (and we think properly) to get a larger proportion of the intangible tax money from the state. However, the people voted this part of the City levy for the Library Fund; and, since the City had the right to have it considered in fixing its

proportion of the taxes collected by the State at 175/266 in 1946, we see no reason why it should not have the right, and duty, to use the 4/266 (4/175 of its part), thus added and received, for the purpose for which the people voted it. Surely there could be no question about the right, and duty, of the City to place the 40/266 (levied for bond retirement and also received from the State) in the Interest and Sinking Fund (which is likewise not a political subdivision and not mentioned in the Director's return), this being, of course, also a levy authorized by vote of the people for that specific purpose. Our conclusion is that 4/175 of these taxes returned by the Director for 1946, and 6/177 for 1947, 1948 and 1949, should be set apart for and credited to the Library Fund.

It is ordered that our peremptory writ issue for that purpose. All concur.

### On Motion For Rehearing.

In its motion for rehearing, respondent calls attention to the 1945 Amendment of Section 14572, R. S. 1939 (Laws 1945, p. 1127) which is the first section of the Library Act. This amendment authorizes a maximum levy of six cents on one hundred dollars valuation annually, "of the assessed valuation of all taxable property in the city," in cities of 600,000 population or over. Respondent argues that the authority to levy a tax for that purpose on intangible property lapsed when this amending act became effective; and that, at most, after 1946, the Library could not be entitled to more than 4/266 of the revenue from taxes on intangibles (the rate voted under the old statute) and not 6/266 (the rate authorized thereafter at the 1946 election) because they claim the amended statute necessarily limited the tax to real and tangible personal property.

However, we think this statute authorizes the fixing of the rate of levy and does not determine whether or not it applies to intangible tax collections. The Constitution (Sec. 4c, Art. X) requires the return of the intangible tax "to the counties and other political subdivisions of their origin, *in proportion to the respective local rates of levy.*" The other 1945 Acts, cited in our opinion, provide how this shall be done. Harmonizing all of these provisions, we think it is clear that the rate of taxation on the assessed valuation of property, subject to ad valorem taxation, is intended to provide the basis for determining the amount and use of intangible tax revenue returned to each political subdivision; and we so rule.

Respondent also says that in the last parapraph of the opinion we incorrectly assumed that the 40/266 levied for bond retirement, was directly voted by the people, citing State ex rel. City of Columbia v. Allen, 183 Mo. 283, 82 S. W. 103, holding the City Council has the duty to fix a levy sufficient to provide the interest and sinking fund required to pay the indebtedness authorized

by the people. Of course, it is the indebtedness that is voted on by the people and not [608] the rate of levy necessary to pay it; and that levy depends to some extent upon the rate of interest and financial market for the City's bonds. Nevertheless, the basis of such a levy is the vote of the people authorizing the indebtedness; and certainly a levy made for such a purpose should be used for that purpose.

The motion for rehearing is overruled. All concur.